580 A.2d 401

PENNSYLVANIA NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY, Appellant,

v.

KAMINSKI LUMBER CO. INC., Danny M. Toney, Barbara
Toney Schurman Machine Inc., a Subsidiary of U.S. Natural
Resources, Inc. and Van Auken Mill Supplies and Equipment
Co., Inc., Appellee.

Superior Court of Pennsylvania.

Argued June 11, 1990.

Decided Sept. 17, 1990.

George F. Douglas, Jr., Carlisle, for appellant.

Lillian M. Morgan, York, for Kaminski Lumber, appellee.

Terry S. Hyman, Harrisburg, for Toney, appellees.

Timothy I. Mark, Harrisburg, for Natural Resources, appellee.

Before WIEAND, DEL SOLE and MONTEMURO, JJ.

DEL SOLE, Judge:

This is an appeal from a grant of summary judgment in a declaratory judgment action. The action was filed by Appellant, Pennsylvania National Mutual Casualty Insurance Company, seeking a ruling that it owed no coverage or duty to provide a defense to its insured, Appellee, Kaminski Lumber Co. As stated by the trial court the genesis of the case concerns an injury sustained by Danny Toney when he was struck by a board rejected from a saw he was using while performing duties for his employer, Mountain Valley Lumber. Mr. Toney and his wife brought suit against Schurman Machine Company, who manufactured the saw, and Kaminski Lumber Co., who purchased the saw from

Schurman. Also named as a defendant was Van Auken Mill Supplies and Equipment Company, Inc. who purchased the used saw equipment from Kaminski and resold it to Mr. Toney's employer.

Kaminski was issued a Comprehensive General Liability Insurance Policy from Pennsylvania National. After Pennsylvania National was notified of the suit it filed the instant declaratory judgment action asking the court to rule that because of an exclusion in the policy, it had no duty to defend or provide coverage to Kaminski. Cross-motions for summary judgment were filed with the court, which ruled against Pennsylvania National and in favor of Kaminski. This appeal followed.

The policy issued to Kaminski included an exclusion which stated that coverage would not apply to bodily injury or property damage included within the "Products Hazard". The term "products hazard" was defined in the policy as:

> 'products hazard' includes *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others.

The policy also provided a definition for the term "named insured's products" as follows:

> goods or products manufactured, sold handled or distributed by the *named insured* or by others trading under his name, including any container thereof (other than a vehicle), but *'named insured's products'* shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

It is Pennsylvania National's position that it is entitled to deny coverage and defense of Kaminski in the action brought by the Toney's because the policy at issue clearly excludes from coverage bodily injury caused by a product such as the saw at issue, after the insured has relinquished

physical possession of the product to others. The trial court rejected this argument and instead concluded that the policy language was ambiguous since the term "product" was not clearly defined. The trial court concluded that the exclusion did not apply in this instance because the claim made against Kaminski was not grounded in products liability.

The trial court correctly characterized the claim brought by the Toney's against Kaminski. Although the complaint sets forth strict liability claims against Schurman Machine and Van Auken Mill Supplies, the allegations against Kaminski are not based in products liability. The complaint alleges that the Toney's injuries were a direct result of Kaminski "negligence and/or gross negligence". The negligent acts were said to include modification of an anti-kick-back safety device and modification of controls on the equipment. Also alleged was negligent conduct in failing to convey to Mr. Toney's employer adequate warnings, instructions or advice, and failure to properly and fully inspect the machinery.

Despite the clear language indicating that the claim brought against Kaminski is based in negligence, Pennsylvania National nevertheless maintains that the allegations are in essence ones of product liability. Pennsylvania National submits that since Kaminski was alleged to have modified a product and failed to have warned of its condition or inspect the product which it eventually sold, it was acting as a seller liable under Section 402A of the Restatement (Second) of Torts. Pennsylvania National maintains that such a seller is not entitled to be provided with a defense or coverage under the terms of the policy.

Most recently in *Harford Mutual Ins. Co. v. Moorhead,* 396 Pa.Super. 234, 578 A.2d 492 (1990) this court was confronted with the question of whether an identical "Products Hazard" exclusion precluded coverage where allegations of negligent failure to warn were made against a wine manufacturer. It was alleged in the complaint that the manufacturer of certain sulfur strips used in wine making

failed to give proper instructions on their use. The insurer argued that although the plaintiff had alleged "negligence" in his complaint, the allegations of failure to instruct or to warn involve establishing proof of a defective product. It was the insurer's position that the complaint was "merely a 'defective product' claim repackaged semantically to evade the 'product hazard' exclusion." *Id.* at —, 578 A.2d at 497.

The *Harford* court concluded that "where, as here, a claim is brought under the auspices of a 'negligent failure to warn,' it is appropriate to view the complaint as one charging improper *conduct,* and not one of making a defective *product,* despite arguable similarities between such claims." At —, 578 A.2d at 501. The *Harford* decision cited to *Friestad v. Travelers Indemnity Co.,* 260 Pa.Super. 178, 393 A.2d 1212 (1978) which also was construing an exclusion, as found in this case and in *Harford,* which excludes coverage for damages *arising out of* an insured's product or reliance upon a representation or warranty made with respect to the product. Relying on the language in *Friestad,* which found that the products hazard was to be applied *"only when a product, rather than a service, is the cause in fact of damages or injury* to a third person" 393 A.2d at 1217, the *Harford* court ruled that the insurer was responsible for defending against the claim of improper conduct and would have to cover the underlying claim if it proved to be successful.

■ The ruling in *Harford* is relevant to the instant case which centers on a complaint which also alleges a failure to inspect and warn. According to the decision in *Harford,* such claims relate only to conduct or service and not a defective product, thus, injuries which result from such "conduct" are not "damages arising out of an insured's product" or representations or warranties made with respect to the product. The exclusion for products hazard does not apply to the claims made by the Toney's regarding Kaminski failure to warn.

However, unlike *Harford,* the complaint in this case involves not only claims regarding conduct of failure to warn and inspect but also allegations that the product was altered creating an unsafe condition. In *Harford* there was no complaint that the product was defective or that it malfunctioned, *Id.* at —, 578 A.2d at 497, while in this case the Toney's do make such allegations against Kaminski. Although such allegations are presented in the Complaint, a more immediate question must be addressed which was not at issue in *Harford.* In *Harford* it was not disputed that the "product" involved was the "named insured's product." The same is not true here. Although the policy provides a definition, as cited earlier, of the term "named insured's product," we agree with the trial court that the term "product" is not defined in the policy and remains ambiguous.

The trial court noted that Kaminski was in the business of buying, sawing and selling lumber, not in the business of selling new or used saws. Under a general definition of the term product, meaning items produced, Kaminski product would be its lumber, not a used piece of equipment it did not manufacture but later sold to another. The court remarked that the policy does not define whether the term "product" is intended to apply only to items "produced" by Kaminski or also to items "produced" by others but sold by Kaminski. Either interpretation may be made.

■ Where we are presented with a policy which includes an exclusion containing language which is ambiguous, obscure, uncertain or susceptible of more than one construction, the language must be construed most favorably to the insured and against the insurer. *Aetna Casualty and Security Company v. Drake,* 343 Pa.Super. 114, 494 A.2d 381 (1985). The trial court properly determined that the policy issued by Pennsylvania National did contain such an ambiguous term and correctly ruled that the provision must be construed in favor of the insured.

This ruling is in keeping with general principles of product liability law. This doctrine set forth in Section 402A of

the Restatement (Second) of Torts and adopted in Pennsylvania, *see Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), imposes strict liability on the seller of any product sold in a defective condition unreasonably dangerous to its user or consumer. One of the conditions necessary to create this special liability is that the seller be "engaged in the business of selling such a product." Restatement (Second) of Torts 402A(a). As stated by our supreme court in *Francioni v. Gibsonia Truck Corporation,* 472 Pa. 362, 372 A.2d 736 (1977):

> Engagement in the business of "selling" (leasing) products is, of course, a basic requirement of the rule. Restatement (Second) of Torts § 402A(1)(a); *Webb v. Zern, supra; McKenna v. Art Pearl Works Inc.,* 225 Pa.Super. 362, 310 A.2d 677 (1973). The reason for this requirement is stated in Comment f to Section 402A:
>
>> The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters in to the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even to his buyer, in the absence of his negligence.

In this case there was no dispute that Kaminski was not engaged in the business of selling used saw equipment. The Toney's who suffered injury as a result of this equipment brought an action against Kaminski based in negligence not in strict liability. Although Pennsylvania National opines that the underlying action is one really sounding in products liability, this theory is belied by the fact that claim is stated to be in negligence and is based upon the sale of a piece of equipment which Kaminski was not in the business of selling.

The "Products Hazard" risk, sought to be excluded in the policy issued by Pennsylvania National, was one governing

bodily injury "arising out of the named insured's products." Although the policy provides a definition of the phrase "named insured's products" as "goods or products manufactured, sold handled or distributed by the named insured" the terms goods or products are not defined. Because we agree with the trial court that this language is ambiguous and because it appears to exclude products liability coverage, which we have shown would be inapplicable under the facts of this case, we agree with the trial court that the allegations in the Complaint against Kaminski do not fall within the exclusion set forth in Pennsylvania National's policy.

■ In interpreting an insurance contract the goal must be to ascertain the intent of the parties as demonstrated by the language contained in the insurance contract. *Mohn v. American Casualty Company*, 458 Pa. 576, 326 A.2d 346 (1974). We agree with the trial court's interpretation of the policy at issue. To paraphrase from *Harford Mutual v. Moorhead, supra*, at ——— ——, 578 A.2d at 503, an insurance company such as Pennsylvania National may avoid exposure to liability by redrafting its "Product's Hazard" or providing a definition of "product" or "goods" so that it *unequivocally* includes claims based upon injuries from any products produced by the insured or produced by another which are sold by the insured. "The instant policy does not uneqivocally provide to the insured any indication that such a claim would not be covered. Accordingly we must hold against the insurance company as drafter of the provision." *Id.*

We affirm the trial court's ruling awarding summary judgment in favor of Kaminski and against Pennsylvania National.