**Mike DEVICH, Jr. and Margaret Devich, his wife, Plaintiffs,**

v.

**COMMERCIAL UNION INSURANCE COMPANY, Defendant.**

Civ. A. No. 93–0963.

United States District Court, W.D. Pennsylvania.

Nov. 10, 1994.

---

James J. Ross, Ambridge, PA, for plaintiffs.

William R. Tighe, Pittsburgh, PA, for defendant.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court are the cross-motions for summary judgment filed by plaintiffs, Mike and Margaret Devich, and defendant, Commercial Union Insurance Company ("Commercial Union"), in this civil action alleging breach of contract and bad faith. The central issue that we are called upon to resolve is whether, under Pennsylvania law, a negligence claim of "failure to warn" falls outside the coverage of the general liability insurance policy issued by Commercial Union to Maverick Mobile Equipment, Inc. ("Maverick") where the terms of the insurance policy include a "products-completed operations hazard" exclusion. For the reasons that follow, we hold that (1) the products-completed operations hazard exclusion did not exclude plaintiffs' negligence claims from coverage, and (2) defendant did not act in bad faith in investigating the claim and in refusing to defend Maverick. Summary judgment will be entered for plaintiffs in the amount of $500,000.00.

The undisputed material facts are as follows. Maverick Mobile Equipment, Inc., a Pennsylvania corporation, came into existence, with Robert Bajek as its president, in the summer of 1986. Maverick is the named insured in the insurance policy at issue and was the sole defendant in the underlying state court personal injury action (*Devich v. Maverick Mobile Equipment, Inc.*, C.A. No. 1808 of 1990 (C.P. Beaver County)). Maverick was formed primarily for the design, development and manufacture of aerial work platforms for sale to the U.S. Navy. Maverick's main office was located on Duss Avenue in Beaver County, Pennsylvania, and Maverick performed all work at that location.

In furtherance of its efforts to secure funding for the production of aerial platforms for the Navy, Maverick sought to engage the assistance of the Corporation for Owner/Operator Projects ("Coop"). Coop is an entity organized for the purpose of assisting businesses in start-up and expansion activities and is primarily engaged in helping to secure federal and state grants and loans. Plaintiff Mike Devich is and was the Executive Director of Coop. Coop agreed to assist Maverick and was successful in obtaining funding. Under a financing arrangement agreed to by the parties, Coop retained a security interest in the aerial platforms, along with other corporate assets of Maverick.

Maverick produced the aerial platforms for the Navy and shipped them to Florida for the Navy's inspection in July, 1988. The platforms were rejected as defective and were returned to Maverick's offices in Beaver County, where Maverick unsuccessfully attempted to repair them in anticipation of a second inspection in September, 1988. After the platforms were rejected a second time, the Navy cancelled the contract with Maverick. Maverick was thereafter unable to secure a buyer for the platforms.

As a result of its inability to sell the platforms, Maverick defaulted on its financial obligations to Coop. In November 1988, Coop seized the platforms from Maverick's headquarters in the hopes that it would be able to find a buyer for the product. On December 28, 1988, Mike Devich was injured while operating one of the platforms for the benefit of a potential buyer. The platform malfunctioned and threw Devich from the basket of the unit to the ground 10–15 feet below, causing severe personal injuries.

Pursuant to its agreement with the Navy, Maverick had been required to obtain general liability insurance. Commercial Union issued a policy to Maverick for the policy years August 1, 1987 through August 1, 1989, in the amount of $500,000.00 per occurrence. Affidavit of Norman B. Whitton, ¶ 3. The policy was terminated by Commercial Union on February 4, 1989 due to Maverick's failure to pay the insurance premiums. *Id.* at ¶ 4. It is undisputed that the Commercial Union policy was in effect at the time that Mike Devich was injured.

In February of 1989, plaintiffs initiated an action against Maverick and its president, Robert Bajek, in the Court of Common Pleas of Beaver County, Pennsylvania, by filing a praecipe for summons. By letter dated August 28, 1989, counsel for Maverick notified Commercial Union's local agent of the summons, and forwarded a copy to defendant. Commercial Union opened a file on the claim on September 1, 1989. On September 14, 1989, defendant took a statement from Bajek with respect to the Devich lawsuit. Apparently in complete reliance on the facts as provided by Bajek, Commercial Union, by letter dated October 3, 1989, notified Maverick's counsel of its determination that no coverage existed because the claim was excluded from coverage pursuant to the products-completed operations hazard exclusion. Maverick sought reconsideration of the determination, without avail. Commercial Union did state, however, that it would reevaluate the claim in the event that a complaint was filed.

In January of 1991, plaintiffs filed their complaint against Maverick, asserting claims under the theories of strict liability (section 402A of the Restatement of Torts, Second), and negligence. By agreement of the parties, Bajek was dropped from the lawsuit and was not a named defendant in the complaint. Bajek, with full power of attorney granted to him by Maverick's Board of Directors in 1987, also agreed to assign all of Maverick's rights under the Commercial Union policy to plaintiffs.

By letter of January 31, 1991, Maverick's counsel sent a copy of the complaint to Commercial Union and advised the carrier that Maverick would offer no defense to the claim. After reviewing the complaint, Commercial Union again denied coverage. Defendant's only stated reason for the denial was that the claim was excluded by the products-completed operations hazard exclusion. Commercial Union acknowledged the existence of "averments of negligence" in the complaint but found them inconsequential because they did not "address anything other than the insured's product." Defendant also stated that

it had no obligation to defend Maverick against the Devich's claims and instructed Maverick to retain its own attorney.

By letter of March 5, 1991, Maverick's counsel informed Commercial Union that plaintiffs intended to take a default judgment against Maverick. Again, the carrier stated that it would take no action because there was no coverage. On April 4, 1991, plaintiffs took default judgment against Maverick. Thereafter, plaintiffs' counsel continued to keep Commercial Union on notice of the status of the lawsuit. On December 4, 1992, a non-jury trial was held to liquidate damages. Defendant was informed of the date of the trial, but declined to participate on behalf of Maverick. At the trial, plaintiffs expressly withdrew all of their claims premised on strict liability and proceeded only on the negligence claims. The state court awarded plaintiffs $800,000.00 in damages and $59,-078.30 in delay damages, for a total judgment of $859,078.30. By special interrogatories, the court ruled that plaintiffs' injuries were proximately caused by Maverick's "negligent failure to warn [Mike Devich] of known defects."

After the judgment was entered against Maverick, plaintiffs, as assignees of Maverick's rights under the Commercial Union policy, filed the instant civil action claiming that defendant is liable for payment of the entire amount of the judgment. Plaintiffs contend that the negligence claim upon which judgment was rendered was covered by the Commercial Union policy and that defendant acted in bad faith in failing to defend Maverick in the state court proceeding and in refusing to provide coverage. Commercial Union denies coverage and a duty to defend. Because we find no genuine issues as to any material fact, we agree with the parties that this case is ripe for resolution on summary judgment.

Essentially two issues are raised by the motions; first, whether the negligence claim of failure to warn, upon which judgment was rendered in the state court litigation, was excluded from coverage under the policy pursuant to the products-completed operations hazard exclusion; and second, whether Commercial Union had an obligation to defend Maverick in the underlying litigation and, if so, whether the carrier's refusal to do so was an act of bad faith.

## I. POLICY COVERAGE

■ In determining whether the failure to warn claim was covered by the Commercial Union policy, we must first examine the terms of the policy under the general rules of policy construction. It is the duty of the court to interpret the intent of the parties to an insurance contract. *DiFabio v. Centaur Ins. Co.*, 366 Pa.Super. 590, 531 A.2d 1141, 1142 (1987). In doing so, we must give the terms that are unambiguous and which clearly reflect the intent of the parties their plain and ordinary meaning. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). However, "overly-subtle or technical interpretations may not be used to defeat reasonable expectations of insureds", *Harford Mut. Ins. Co. v. Moorhead*, 396 Pa.Super. 234, 578 A.2d 492, 495 (1990), and any ambiguous terms must be resolved against the insurer or drafter of the policy. *DiFabio* 531 A.2d at 1142.

■ The commercial general liability policy purchased by Maverick provides that coverage shall extend to all of "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Commercial Union Policy, § I, ¶ 1(a). Under a general liability policy, this declaration of coverage must be read broadly to include all bodily injury or property damage that occurs during the policy period, except to the extent that such coverage is specifically limited by the express exclusions found elsewhere within the policy.

The exclusion upon which defendant principally relies is the products-completed operations hazard exclusion, which states that: "This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard." The policy defines "products-completed operations hazard" as follows:

"Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from the premis-

**1234**

es you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

"Your product" and "Your work" are each defined to include:

warranties or representations made at any time with respect to the fitness, quality, durability or performance of ["Your product" or "Your work"].

Commercial Union contends that, pursuant to the this exclusion, plaintiffs' claims were excluded as a matter of law because (1) the platform was no longer in Maverick's physical possession; (2) Maverick had completed or abandoned work on the platform by the time that Mike Devich was injured; and (3) the injuries to Devich were caused by a defect in the platform.

In response, plaintiffs argue that pursuant to two recent decisions of the Pennsylvania Superior Court, the exclusion is inapplicable to plaintiffs' negligence claims.[1] In *Harford Mutual Ins. Co. v. Moorhead, supra,* the Superior Court addressed the identical issue. There, Harford brought a declaratory judgment action seeking a determination as to whether it was obligated to defend the insureds against a failure to warn claim. The court held that the carrier had a duty to defend and further that the products hazard exclusion, similar in its terms to the instant exclusion, did not exclude from coverage a negligent failure to warn claim. *Id.* 578 A.2d at 501–03.

In reaching its holding, the court noted that the Pennsylvania Supreme Court "perhaps more than any other state appellate court in the nation, has been emphatic in divorcing negligence concepts from product liability doctrine." *Id.* at 500 (citations omitted). Accordingly, the court held that where

a claim is brought under the auspices of a "negligent failure to warn," it is appropriate to view the complaint as one charging improper *conduct,* and not one of making a defective *product,* despite arguable similarities between such claims. The fact that the same facts could have given rise to a *product* related claim is irrelevant; nothing in our prior case law suggests that such claims must be asserted under strict liability theories rather than negligence theories. Indeed, there appears to be no restriction even requiring an election between theories; rather, both may be pursued in a single suit.

*Id.* at 501 (citations omitted; emphasis in the original).

Commercial Union argues that *Harford* should be distinguished because, unlike here, the product in that case (a sulphur strip used in the wine-making process for killing bacteria) was not defective, rather it was the failure to provide warnings or instructions with respect to the use of the product which caused the injuries. Because, in the instant action, the Devichs' claim is that Maverick failed to warn Mike Devich of a defect in the product itself, Commercial Union contends that the claim is more akin to a defective product claim than an improper conduct claim and, therefore, must be excluded from coverage. We disagree.

■ In *Harford,* the court recognized the overlap between a products liability claim and a claim of negligence:

The difficulty in determining the nature of the instant complaint lies in the fact that in the "failure to warn" context, the theories of strict liability (in proving the product defective) and negligence (in proving

1. Plaintiffs raise two additional arguments which are without merit. First, plaintiffs argue that the products-completed operations hazard exclusion does not apply to the instant dispute because the exclusion applies only to businesses that perform work at premises other than their own. *Pacific Indemnity Co. v. Linn,* 766 F.2d 754 (3d Cir. 1985). While we agree that, pursuant to *Linn,* the "completed operations" section of the exclusion has no relevance to this action because Maverick performed all of its work at its Beaver County office, the rule does not extend to "products hazard" exclusions. *Id.* at 764–65.

Plaintiffs second argument is that, pursuant to the testimony of Bajek, Maverick's work on the platforms had not been completed. We reject this argument on the basis that, even if Maverick had intended to continue work on the project, it could no longer do so and, due to the seizure by Coop, any work which had not been completed was effectively abandoned.

the seller acted unreasonably) appear to overlap. 578 A.2d at 499. In the face of this overlap, the court, as rehearsed, held that a complaint which asserts a claim of failure to warn under a negligence theory must be viewed as "one charging improper conduct, and not one of making a defective product." This holding is consistent with the analogous rule of insurance law that "the underlying complaint fixes the parameters of an insurer's obligation to defend its insured." *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 618 A.2d 945, 953 (1992). In our judgment, *Harford* stands for the proposition that an insurer must accept a claim as stated in the complaint and cannot justify its decision to deny coverage by attempting to recharacterize the claim to fit within the terms of the exclusion.

■ Commercial Union's attempt to distinguish *Harford* is also unpersuasive in light of the Superior Court's decision in *Pennsylvania National Mutual Cas. Ins. Co. v. Kaminski Lumber Co., Inc.*, 397 Pa.Super. 484, 580 A.2d 401 (1990), which was decided less than two months after *Harford*. In that case, the insurer brought a declaratory judgment action seeking a determination as to its policy coverage and duty to defend the insured against a negligent failure to warn claim in the face of the products-hazard exclusion in the insured's policy. In that case, in addition to claims that the seller of the product (an electric saw) failed to provide adequate warnings, instructions and advice as to the use of the product, it was also alleged that the product itself, specifically the anti-kickback safety device and certain controls on the saw, was defective. *Id.* 580 A.2d at 402. The court, relying on *Harford*, rejected the insurer's contention that the failure to warn claims were excluded from coverage because they were, "in essence", claims of product liability, and held that the plaintiff

had a duty to defend and to provide coverage on the negligence claims. *Id.* at 402, 404.[2]

Commercial Union's reliance on the opinion of the Court of Appeals in *Viger v. Commercial Ins. Co. of Newark, N.J.*, 707 F.2d 769 (3d Cir.1983), is also misplaced because the Court did not apply Pennsylvania law to that action, which arose from transactions that occurred in the Virgin Islands. Moreover, *Viger*, which was decided in 1983, was decided without the benefit of the *Harford* decision. Finally, we reject defendant's contention that the Pennsylvania Supreme Court implicitly overruled *Harford* in *J.H. France Refractories v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502 (1993). Nowhere in the opinion does the court address the applicability of a products hazard exclusion in the context of a negligent failure to warn claim. Indeed, there is no indication that the plaintiffs in that case even alleged claims of negligence or that the Supreme Court considered the applicability of the exclusion with respect to negligence claims. Accordingly, we hold that the products-completed operations exclusion contained in the Commercial Union policy did not exclude coverage for plaintiffs' claim of negligent failure to warn.

Defendant relies on two additional terms of the policy in support of its motion. It contends that judgment is warranted because (1) coverage does not exist due to the absence of an "occurrence" which would trigger coverage, in light of Bajek's alleged intentional misrepresentations to Mike Devich regarding the safety of the lifts, and (2) that coverage does not exist due to the "expected or intended" exclusion in the policy and Maverick's knowledge of the dangerous nature of the lifts.[3]

■ Commercial Union asserts that, because Bajek allegedly made intentional misrepresentations to Devich regarding the safe-

---

2. Defendant argues that *Kaminski* was actually decided on other grounds. We disagree. Although the court concluded that coverage existed over the products liability claims on the basis that the term "product" in the policy was ambiguous, the court also determined that the failure to warn claims were not excluded by the products hazard exclusion because they alleged negligent conduct. *Id.* 580 A.2d at 403.

3. We note that, because defendant did not raise these defenses at the time that it denied coverage to Maverick, it is estopped from asserting them in defense of plaintiffs' bad faith failure to defend claim. However, defendant is not estopped from asserting these defenses in attempting to establish that there was no coverage.

ty of the aerial platforms, there was no " 'occurrence' in terms of an 'accident', *i.e.*, an unexpected and unintended act", and that coverage exists "only if [Devich's] injuries resulted from an accident." Defendant's Memorandum of Law in Support of Motion for Summary Judgment, p. 13. Defendant also asserts that the injuries to Devich were "expected or intended" by Maverick because Bajek knew of the defective condition of the platforms. The Commercial Union policy excludes coverage for bodily injury which is "expected or intended from the standpoint of the insured." Policy, § I, ¶ 2(a).

We reject both arguments because they rely on theories of intentional misconduct on the part of Maverick. Such reliance is misplaced because the state court has already concluded that the cause of Mike Devich's injuries "[w]as the *negligence* of [Maverick] . . . in failing to warn [Coop or Mike Devich] of [the] defects [in the platform]." Special Interrogatory for the Court, No. 6 (emphasis added). As a result, we agree with plaintiffs that Commercial Union is estopped from asserting intent as a defense.

In sum, we hold that plaintiffs' claim of negligent failure to warn does not fit within any of the express exclusions and is therefore covered by the defendant's policy.

## II. BAD FAITH DUTY TO DEFEND

Our finding of coverage does not completely resolve the instant action because the policy limit ($500,000.00) is less than the judgment that the state court awarded to plaintiffs ($859,078.30). Plaintiffs assert that Commercial Union is liable for the entire judgment, regardless of the policy limits, because it acted in bad faith in refusing to defend Maverick in the personal injury action.

■ It is settled under Pennsylvania law and elsewhere that an insurer owes the insured a duty to act in good faith. *See, e.g., Cowden v. Aetna Casualty and Surety Co.*, 389 Pa. 459, 134 A.2d 223 (1957). Moreover, an insurer has a duty to defend its insured against any claims which could potentially fall within the coverage of the policy. *Gedeon v. State Farm Mutual Automobile Ins.*

*Co.*, 410 Pa. 55, 188 A.2d 320 (1963). Plaintiffs contend that Commercial Union, in bad faith, breached its obligation to defend Maverick.

■ Our finding of coverage mandates a holding that defendant also breached its duty to defend. As rehearsed, an insurer is obligated to defend against claims made against the insured if the claims are potentially within the coverage of the policy. Thus, if the complaint asserts a claim "which may fall within the coverage of the policy, the insurer is obligated to defend." *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 618 A.2d 945, 953 (1992). Because we have concluded that the claim against Maverick for negligent failure to warn falls within the policy's coverage, we also hold that Commercial Union breached its duty to defend.

■ Our holding that Commercial Union breached its duty to defend is, within the context of this case, unimportant. Where an insurer is found to have breached its duty to defend, the insured may recover the costs of hiring substitute counsel and other costs of the defense. However, such a finding does not, without more, require the insurer to indemnify plaintiffs for the entire amount of the judgment. *Id.* Because Maverick did not defend against the personal injury claims and incurred no defense costs, plaintiffs cannot claim damages from a finding of breach.

■ Commercial Union may be required to indemnify beyond the limits of the policy only if its decision not to defend was made in bad faith. As stated, an insurer owes the duty to act in good faith in handling the claim of the insured and failure to do so may subject the insurer to liability for the entire amount of the judgment against the insured, regardless of the policy limitation. *Cowden*, 134 A.2d 223, 227. Bad faith must be proven by clear and convincing evidence. *Id.* at 229.

■ We hold that Commercial Union did not act in bad faith in denying a defense to Maverick. Although we find that defendant's conduct was impractical with respect to risk management, the facts establish that the carrier acted in good faith based upon a firm belief that the claims were not covered. Im-

mediately after receiving notice of the claim from Maverick, defendant undertook an investigation of the claim, which included interviewing Bajek, to determine the underlying facts relevant to the coverage issue. Once it determined that the injuries to Mike Devich were caused by defects in the aerial platform, defendant denied coverage on the basis that the claim fell within the products-completed operations hazard exclusion. Although we have determined that this was a faulty basis for coverage denial, it was not unreasonable for Commercial Union to rely on the exclusion in view of the status of the law in Pennsylvania with respect to the scope of the exclusion.

Prior to the decisions of the Superior Court in *Harford* and *Kaminski Lumber*, no Pennsylvania appellate court had directly addressed the question whether the products hazard exclusion applied to claims for negligent failure to warn. Moreover, the authorities in other jurisdictions favored exclusion of such claims where the injuries were caused by a defect in the product itself. *See Brewer v. Home Ins. Co.*, 147 Ariz. 427, 710 P.2d 1082 (1985) (citing cases). Although we have held that the Superior Court decisions establish that, under Pennsylvania law, the products hazard exclusion does not apply to negligent failure to warn claims, we recognize that those decisions contain language which could lead to another conclusion. For example, in *Harford*, the court quoted with approval the following passage from *Brewer*:

> The foregoing cases establish the following principles. Products Hazard coverage is intended to protect the manufacturer or seller of goods from claims for injury or damage arising out of the use of the insured's products. The risk which is being insured is that the product will not perform in the manner expected. If the product works as it is supposed to, but through other negligence the insured's product causes injury or damage, there is no coverage. *Thus, where Products Hazard coverage is excluded, the insurer is not responsible for the failure of the insured's products or goods to work as anticipated.*

*Harford*, 578 A.2d at 496 (quoting *Brewer* 710 P.2d at 1086) (emphasis in the original).

Under these circumstances, we hold that the refusal of Commercial Union to defend Maverick does not constitute bad faith.

We note that, although defendant did not act in bad faith, it refusal to defend was, in our judgment, imprudent. It is settled that an insurer that refuses to defend an insured does so at its peril. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959). In view of the clear allegations of negligence in the underlying complaint and the state of Pennsylvania law on the issue, defendant should have been aware that a court could conclude that the claim was covered. Under the circumstances, its failure to defend Maverick under a "reservation of rights" or seek a declaratory judgment for a determination as to coverage was a high-risk gamble taken in the face of a potentially large judgment. Moreover, by failing to choose either of these options, Commercial Union lost any chance to challenge the merits of plaintiffs' underlying claims.

## IV. CONCLUSION

We hold that plaintiffs are entitled to summary judgment against Commercial Union in the amount of $500,000.00. We further hold that defendant did not engage in bad faith in refusing to defend Maverick against the plaintiffs' claims and, therefore, the carrier is not obligated to indemnify plaintiffs for a sum that exceeds the policy limits.

## *ORDER OF COURT*

AND NOW, this 10th day of November, 1994,

IT IS ORDERED that the motion (document no. 33) of plaintiffs, Mike Devich, Jr. and Margaret Devich, for summary judgment be and hereby is granted in part and denied in part. The motion be and hereby is granted with respect to the claim of coverage and judgment be and hereby is entered in favor of plaintiffs in the amount of $500,-000.00.

IT IS FURTHER ORDERED that the motion be and hereby is denied with respect to the claim of bad faith and judgment be and hereby is entered in favor of defendant,

Commercial Union Insurance Company, on that claim.

IT IS FURTHER ORDERED that the motion of defendant (document no. 27) for summary judgment be and hereby is denied.