338 S.C. 43 (1999)
524 S.E.2d 847
LAIDLAW ENVIRONMENTAL SERVICES (TOC), INC., a subsidiary of Laidlaw Environmental Services, Inc., Appellant,
v.
AETNA CASUALTY & SURETY COMPANY OF ILLINOIS, Respondent.
No. 3078.
Court of Appeals of South Carolina.
Heard October 7, 1999.
Decided November 22, 1999.
*44 Kenneth W. Ebener, of Kirkland, Wilson, Moore, Taylor & O'Day, of West Columbia; and Wilmot B. Irvin, of Law Offices of Wilmot B. Irvin, of Columbia, for appellant.
John E. Johnson and Robert D. Moseley, Jr., both of Leatherwood, Walker, Todd & Mann, of Greenville, for respondent.
*45 HEARN, Judge:
In this insurance case, Laidlaw Environmental Services (TOC), Inc. (Laidlaw) appeals the circuit judge's interpretation of a commercial general liability insurance policy issued by Aetna Casualty & Surety Company of Illinois (Aetna). We affirm.

FACTS
Laidlaw contracted with Radco Process Equipment (Radco) to construct a "baghouse" [1] for Laidlaw's hazardous waste incineration system. Radco abandoned the project and Laidlaw hired a replacement contractor to complete construction. When placed into operation, the baghouse system leaked.
Laidlaw sued Radco for breach of contract, breach of UCC express warranty, breach of UCC implied warranty of merchantability, breach of UCC implied warranty of fitness for a particular purpose, negligence or recklessness in design and installation of the baghouse, and negligent misrepresentation.
On April 22, 1994, Radco's insurance carrier, Aetna, sent Radco a letter stating that it would provide coverage for and a defense to Laidlaw's claims under a reservation of rights, pending further investigation of the claims.
On June 1, 1994, Aetna sent Radco a letter stating that it would provide coverage for certain, but not all, of Laidlaw's claims, once again under a reservation of rights depending on what information arose during the discovery process.
The policy Aetna issued to Radco contained an endorsement stating "[t]his insurance does not apply to `bodily injury' or `property damage' included within the `productscompleted operations hazard.'" The policy defined productscompleted operations hazard as follows:
11.a. "Productscompleted operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

*46 1. Products that are still in your physical possession; or
2. Work that has not yet been completed or abandoned.
b. "Your work" will be deemed completed at the earliest of the following times:
(1) When all of the work called for in your contract has been completed.
(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
(3) When that part of the work done at a job site has been put into its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
On October 19, 1994, Aetna sent Radco a letter stating that Laidlaw's claims fell within productscompleted operations coverage which Radco did not purchase, and therefore Aetna did not feel there was any coverage available, nor any obligation to defend under Radco's policy.
On September 30, 1995, Radco and Laidlaw settled and, as part of the settlement, Radco assigned its rights against Aetna to Laidlaw.
On August 5, 1996, Laidlaw sued Aetna for breach of contract and bad faith refusal to pay, asserting Aetna wrongfully denied Radco coverage and withdrew its defense of Radco without reasonable cause. Laidlaw subsequently amended its complaint, asserting as a third cause of action that Aetna waived its right to deny coverage by first agreeing to provide coverage.
Aetna denied the allegations contending the policy excluded coverage for the damages Laidlaw sought. Aetna's answer attached an affidavit by R. Victor Bell, Radco's principal, which stated Radco discussed productscompleted operations coverage with Aetna and specifically rejected such coverage. Both Aetna and Laidlaw filed cross-motions for summary judgment.
*47 The circuit judge granted Aetna summary judgment. Laidlaw appeals, contending the circuit judge erred in (1) finding Laidlaw's damages claims fell within the policy's products completed operations hazard exclusion, (2) finding the policy failed to provide coverage for business risks and faulty workmanship, (3) dismissing Laidlaw's bad faith claims, (4) failing to find exclusion `m' entitled Laidlaw to summary judgment, and (5) failing to find Aetna waived its right to deny Radco coverage.

STANDARD OF REVIEW
Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), SCRCP. In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the non-moving party. Caf'e Assocs., Ltd. v. Gerngross, 305 S.C. 6, 9, 406 S.E.2d 162, 164 (1991).

DISCUSSION

I. Productscompleted operations exclusion
It is undisputed that this policy specifically excludes productscompleted operations hazard coverage. Therefore, if Laidlaw's claims fall within the policy's productscompleted operations exclusion, Aetna properly denied coverage under the policy. Accordingly, Laidlaw asserts its claims fell within an exception to the policy's productscompleted operations exclusion and contends the circuit judge erred in finding the policy's endorsement excluding such coverage precludes Laidlaw's claims.
"[R]ules of construction require clauses of exclusion to be narrowly interpreted, and clauses of inclusion to be broadly construed. This rule of construction inures to the benefit of the insured." McPherson v. Michigan Mut. Ins. Co., 310 S.C. 316, 319, 426 S.E.2d 770, 771 (1993). Where the words of an insurance policy are capable of two reasonable interpretations, *48 we will adopt the construction most favorable to the insured. Forner v. Butler, 319 S.C. 275, 277, 460 S.E.2d 425, 427 (Ct.App.1995) (citing Greenville County v. Insurance Reserve Fund, 313 S.C. 546, 443 S.E.2d 552 (1994)). "Furthermore, exclusions in an insurance policy are to be construed most strongly against the insurer." Forner, 319 S.C. at 277, 460 S.E.2d at 427.
However, we subject insurance contracts to the same rules of interpretation governing other types of contracts. Unisun Ins. Co. v. Schmidt, 331 S.C. 437, 440, 503 S.E.2d 211, 213 (Ct.App., 1998), cert. granted, (April 22, 1999). "The foremost rule in interpreting an insurance contract is to give effect to the intent of the parties as shown by the language of the contract itself. When the contract language is clear and unambiguous, the language alone determines the contract's force, and terms must be construed to give effect to their `plain, ordinary, and popular meaning.'" Dorman v. Allstate Ins. Co., 332 S.C. 176, 178, 504 S.E.2d 127, 129 (Ct.App.1998). "Ambiguity may not be created in an insurance policy by singling out a sentence or a clause ... [and] courts may not torture the ordinary meaning of language to extend coverage expressly excluded by the terms of a policy." Falkosky v. Allstate Ins. Co., 311 S.C. 369, 371, 429 S.E.2d 194, 196 (Ct.App.), modified, 312 S.C. 210, 439 S.E.2d 836 (1993) (internal citations omitted).
Both parties agree Radco abandoned work on Laidlaw's baghouse system. Both parties also agree that another contractor finished the work and the baghouse was then put into operation. It is then that the baghouse system leaked, causing Laidlaw's damages. Thus, it is clear that the work had been both completed, albeit not by Radco, and abandoned before the accident occurred. Even though Laidlaw concedes that Radco did not purchase productscompleted operations coverage, it contends Radco's abandonment invoked the second exception to the productscompleted operations exclusion, thus bringing its claims within the policy's coverage. We disagree.
By its plain meaning, productscompleted operations coverage applies when the insured contractor completes work on a project. Accordingly, "[w]ork that has not yet been *49 completed" is still in progress and not covered under the productscompleted operations coverage. Similarly, work that has not been abandoned is still in progress and not covered under productscompleted operations coverage. Conversely, when an insured abandons work on a project the insured has effectively "completed" its work for that project, even if the project remains unfinished, thus invoking productscompleted operations coverage. Consequently, when read in context, this policy excludes productscompleted operations coverage except when the insured's work is still in progress because it has not been completed or not been abandoned. Stated differently, this exclusion applies when work has been completed or abandoned. Therefore, Radco's abandonment invoked the productscompleted operation exclusion and precludes Laidlaw's claims. See Allan E. Korpela, Annotation, Construction and Application of Clause Excluding from Coverage of Liability Policy "Completed Operations Hazards" 58 A.L.R.3d 12 (1974) (noting productscompleted operations coverage generally covers injury or damages after the insured's operations as to a particular activity have been completed or abandoned).
Moreover, the policy deems work "complete" when "that part of the work done at a job site has been put into its intended use by any person or organization other than another contractor or subcontractor working on the same project." It is undisputed that after Radco abandoned the project, another contractor finished the baghouse, which Laidlaw then placed into operation. This removes all doubt as to the applicability of the productscompleted operations exclusion, as the work was both abandoned and completed within the meaning of the policy.

II. Laidlaw's negligence claims
Laidlaw next contends that even if the products completed operations exclusion applies, the policy should not preclude Laidlaw's underlying claims based on negligence. We disagree.
Productscompleted operations coverage encompasses bodily injury and property damages arising out of "your product" or "your work." "Your work" means "[w]ork or operations *50 performed by you or on your behalf" and includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of `your work.'" Therefore, the policy's language indicates products completed coverage applies to damages arising from the insured's negligence in performing work and any negligent misrepresentations made concerning the work. Furthermore, the exclusion provides that, "Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." This language clearly contemplates problems arising from negligent performance of work, providing further indicia that this exclusion applies to negligence claims.
Laidlaw relies on Devich v. Commercial Union Ins. Co., 867 F.Supp. 1230 (W.D.Pa.1994), to argue its negligence claims are not covered by the productscompleted operations exclusion. This reliance on Devich is misplaced. First, Devich did not find general claims of negligence outside the realm of the productscompleted operations exclusion. The district court's holding, as well as the cases it cites as support, is limited to claims of negligent failure to warn. Laidlaw made no failure to warn claims against Radco in any of its complaints. Second, while we recognize that the reasoning behind the Devich decision is that a failure to warn claim involves improper conduct rather than a product claim, and that Laidlaw's claims of negligent misrepresentation may raise the issue of improper conduct, we are not persuaded we should adopt the position of a Pennsylvania federal court applying that state's law to a different set of facts. Furthermore, there is authority which we find equally compelling from other jurisdictions that is contra to the Devich decision. See Flint v. Universal Machine Co., 238 Conn. 637, 679 A.2d 929, 933, 936-37 (1996) (finding productscompleted operation exclusion unambiguous and applicable to negligent failure to warn claims); American States Ins. Co. v. Aetna Life & Cas. Co., 177 Ind.App. 299, 379 N.E.2d 510, 514 (1978) (finding productscompleted operations exclusion applicable to negligent representation and failure to warn claims; "Extension of coverage to all such accidents would render a [products completed operations] exclusion meaningless in the many cases in which an insured recommends or makes representations *51 about his products or services, or fails to warn of potential dangers."); Jones v. Sears Roebuck & Co., 80 Wis.2d 321, 259 N.W.2d 70, 74 (1977) (finding productscompleted operations exclusion applicable to negligent representation claims). Therefore, we decline to adopt the reasoning of Devich, and affirm the circuit judge's ruling on this issue.

III. Laidlaw's bad faith claim
Because we hold Aetna's decision to deny coverage comported with the policy, Laidlaw's bad faith claim is moot.

IV. Exception to policy exclusion "m"
Laidlaw contends the policy provides coverage for Laidlaw's claims, including coverage for business risks and faulty workmanship, because Laidlaw's claims fit within an exception to exclusion "m." The policy excludes coverage for:
m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.
The circuit judge found Laidlaw's claims fell within the exception to exclusion "m." Laidlaw now contends the policy provides coverage for Laidlaw's claims because Laidlaw's claims fall within the exception to exclusion "m." We disagree.
Laidlaw's contention the exception to exclusion "m" creates coverage fails because "[e]xclusions in an insurance policy are to be read independently of each other; they are not to be read cumulatively [and] `[i]f any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions.'" Engineered Products, Inc. v. Aetna Cas. & Sur. Co., 295 S.C. 375, 378-79, 368 S.E.2d *52 674, 675-76 (Ct.App.1988) (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788, 795 (1979)); see also La-Marche v. Shelby Mut. Ins. Co., 390 So.2d 325, 326 (Fla.1980) (noting that "an exclusion does not provide coverage but limits coverage"). It is clear the Aetna policy's productscompleted operations exclusion bars Laidlaw's claims. Therefore, the exception to exclusion "m" cannot provide coverage to Laidlaw.

V. Waiver by Aetna
Finally, Laidlaw contends Aetna waived its right to refuse coverage and withdraw representation by originally agreeing to provide coverage and representation. We disagree.
"A waiver is a voluntary and intentional abandonment or relinquishment of a known right." Janasik v. Fairway Oaks Villas Horizontal Property Regime, 307 S.C. 339, 344, 415 S.E.2d 384, 387 (1992). The party claiming waiver bears the burden of establishing "that the party against whom waiver is asserted possessed, at the time, actual or constructive knowledge of his rights or of all material facts upon which those rights depended." Heritage Federal Sav. and Loan Assoc. v. Eagle Lake and Golf Condominiums, 318 S.C. 535, 545, 458 S.E.2d 561, 567 (Ct.App.1995) (citing Janasik, 307 S.C. at 344, 415 S.E.2d at 387-8).
On April 22, 1994, Aetna sent Radco a letter stating:
Per our earlier conversation, given the nature of the allegations made in the law suit, we find it necessary to reserve our rights to disclaim coverage totally or in part at a later date, if necessary. Further, any investigation or activity in connection to this claim will be handled under a full reservation of rights. Such investigation or activity heretofore or hereafter does not prejudice our rights to disclaim coverage at a later date, if necessary.
On June 1, 1994, Aetna sent Radco a letter stating in part: "We will provide coverage for the loss under a general reservation of rights subject to the definitions and wordings of your policies."
*53 The above correspondence between Aetna and Radco reveal Aetna repeatedly reserved its right to deny coverage and correspondingly withdraw representation as its investigation of Laidlaw's claims proceeded. Laidlaw thus failed to establish Aetna voluntarily and intentionally relinquished its right to deny coverage. Moreover, even if Aetna waived its right to deny coverage, Laidlaw's contention still fails because "[w]aiver cannot create coverage and cannot bring into existence something not covered in the policy." Alverson v. Minnesota Mut. Life Ins. Co., 287 S.C. 432, 434, 339 S.E.2d 140, 142 (Ct.App.1985).
For the foregoing reasons, the summary judgment order is
AFFIRMED.
CURETON and HOWARD, JJ., concur.
NOTES
[1] According to Laidlaw, a "baghouse" is essentially a dust filtration and collection system which is used to remove fly ash and other particulate matter from the gas stream resulting from the incineration of hazardous material.