**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2009**

STONELEDGE AT LAKE KEOWEE OWNERS' ASSOCIATION, INC.,

Plaintiff – Appellee,

v.

CINCINNATI INSURANCE COMPANY; BUILDERS MUTUAL INSURANCE COMPANY,

Defendants – Appellants.

Appeal from the United States District Court for the District of South Carolina, at Anderson.  Bruce H. Hendricks, District Judge.  (8:14-cv-01906-BHH)

Argued:  October 28, 2022                    Decided:  December 13, 2022

Before WYNN and RUSHING, Circuit Judges, and MOTZ, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  John Robert Murphy, MURPHY & GRANTLAND, PA, Columbia, South Carolina, for Appellants.  Robert Thomas Lyles, Jr., LYLES & ASSOCIATES, LLC, Mt. Pleasant, South Carolina, for Appellee.  **ON BRIEF:**  Timothy J. Newton, MURPHY & GRANTLAND, PA, Columbia, South Carolina, for Appellants.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this diversity case, Stoneledge at Lake Keowee Owners' Association, Inc. ("Stoneledge") seeks a declaratory judgment against Cincinnati Insurance Company ("Cincinnati") and Builders Mutual Insurance Company ("Builders Mutual") to collect damages arising out of a construction-defect lawsuit.[1]  This appeal turns on the adequacy of the insurers' reservation of rights letters, which in turn determines insurance coverage for judgments Stoneledge obtained from Cincinnati's and Builders Mutual's insureds. Applying controlling South Carolina law, we hold that the reservations of rights here do not provide a basis for denial of coverage.  Accordingly, we affirm the judgment of the district court.

I.

Stoneledge, a homeowners association, manages a community of 80 townhomes on Lake Keowee in South Carolina.  Construction of the Stoneledge townhomes proceeded in two phases.  Phase I consisted of the first 37 units, built initially by a different general contractor and then by Marick Home Builders, LLC ("Marick") and Marick's managing member, Rick Thoennes ("Thoennes").  Phase II consisted of the remaining units, all built by Marick and Thoennes.  In 2009, Stoneledge brought suit against Marick and Thoennes, among other defendants, alleging construction defects in the townhomes that resulted in water intrusion and other physical damage.

---

[1] Previously, we placed this case in abeyance pending the Supreme Court of South Carolina's final disposition of the underlying construction-defect litigation.

2

Marick and Thoennes held commercial general-liability policies through Cincinnati and Builders Mutual covering, in relevant part, "property damage" as defined by the policies. Builders Mutual issued policies covering the period from January 30, 2004 to October 20, 2007, and Cincinnati issued policies covering the period from April 1, 2008 to April 1, 2012. After Marick notified the insurers of the underlying action, Builders Mutual sent Marick two reservation of rights letters, one in May 2009 and one in July 2009. Cincinnati sent Marick one reservation of rights letter in March 2010.

As with the construction, the underlying construction-defect action was divided into two phases with separate trials set for Phase I and Phase II. Stoneledge prevailed in the Phase I trial, becoming a judgment creditor of the insureds. After a series of appeals, the Supreme Court of South Carolina clarified the value of Stoneledge's judgments for Phase I: $286,022.06 against Marick for breach of warranty, $343,226.47 against Marick for negligence, and $1,000,000 against Thoennes for breach of fiduciary duty. *See Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. IMK Dev. Co.*, 866 S.E.2d 542, 557–58 (S.C. 2021).

After the Phase I trial, in March 2014, Stoneledge brought a declaratory-judgment action against Cincinnati in state court, seeking coverage for the Phase I judgment in the underlying action. The insurers removed the case to federal court, and in September 2016, Stoneledge amended its complaint, adding Builders Mutual as a defendant and seeking coverage for $2,000,000 in Phase II damages pursuant to a settlement agreement entered into by Stoneledge, Marick, Thoennes, and the insurers before the Phase II trial was set to take place. The parties cross-moved for summary judgment.

3

The district court granted Stoneledge's motion for summary judgment, primarily on the ground that the insurers failed to reserve the right to contest coverage. After the district court denied the insurers' motion to reconsider, the insurers filed this appeal.

II.

We review the district court's grant of summary judgment de novo. *DENC, LLC v. Phila. Indem. Ins. Co.*, 32 F.4th 38, 46 (4th Cir. 2022). The parties agree that, because this case arises under our diversity jurisdiction, South Carolina law governs. And where the Supreme Court of South Carolina has spoken directly or indirectly on the issue before us, we apply its jurisprudence. *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002).

In this case, the Supreme Court of South Carolina's decision in *Harleysville Group Insurance v. Heritage Communities, Inc.*, 803 S.E.2d 288 (S.C. 2017), controls. Relying on the "axiomatic" principle that "an insured must be provided sufficient information to understand the reasons the insurer believes the policy may not provide coverage," *Harleysville* held that "generic denials of coverage coupled with furnishing the insured with a copy of all or most of the policy provisions (through a cut-and-paste method) is not sufficient." 803 S.E.2d at 297. Lodging a litany of grievances with the rationale in *Harleysville*, and attempting to cast its holding as highly fact-specific, the insurers ask us to look elsewhere for a rule governing coverage in this case. It is, however, not for us to second-guess a decision of the Supreme Court of South Carolina on a matter of South Carolina law.

4

The insurers first attempt to limit *Harleysville* to its particular context.  They argue that *Harleysville* stemmed from a unique posture:  Applying a deferential standard of review, the *Harleysville* court adopted the findings, including on the inadequacy of the reservation of rights, made by a special referee after an evidentiary hearing.  But the *Harleysville* court never limited its holding to the posture or facts of the case before it, and the insurers do not point to any subsequent cases that limit *Harleysville*'s holding in the way they urge here.  Rather, subsequent cases applying South Carolina law indicate that *Harleysville*'s holding applies broadly to cases assessing the sufficiency of an insurer's reservation of rights.  *See, e.g.*, *Am. Serv. Ins. Co. v. OnTime Transp., LLC*, No. 5:17-cv-01120-JMC, 2019 WL 3972820, at *12 (D.S.C. Aug. 22, 2019); *State Nat'l Ins. Co. v. Eastwood Constr. LLC*, No. 6:16-cv-02607-AMQ, 2018 WL 8787543, at *20 (D.S.C. Sept. 5, 2018) (Quattlebaum, J.).

In a variation on their theme of limiting *Harleysville* to its facts, the insurers also argue that the case at hand is distinguishable because, as to the Phase II damages, the settlement agreement supplemented the reservation of rights letters.  Even accepting that contention, the settlement agreement sets forth a no more specific reservation of rights.  Rather, any reservation the settlement agreement does contain is of the general, "we will let you know later" variety that *Harleysville* found inadequate.  *See Harleysville*, 803 S.E.2d at 299.  Simply agreeing to litigate coverage in a subsequent declaratory-judgment action does not in itself create an adequate reservation of rights under *Harleysville*.

Moreover, we agree with the district court that if the reservation of rights letters are deficient as to Phase I, they are similarly deficient as to Phase II.  The insurers received

notice of the underlying action in 2009 and of the third amended complaint in 2012, when the action had not yet been bifurcated. This thus provided the insurers ample opportunity to set forth an adequate reservation of rights that would apply to both Phase I and Phase II damages. They did not do so. That the parties later entered into a settlement agreement for Phase II does not absolve the insurers of their obligation to set forth sufficiently specific reservations of rights.

Next, the insurers challenge the retroactive application of *Harleysville* to the reservation of rights letters in this case, which were issued years before *Harleysville* was decided. But *Harleysville* itself held that, except as to one specific coverage defense, a reservation of rights letter issued years prior to the court's decision was inadequate. 803 S.E.2d at 298.

The insurers maintain, however, that the *Harleysville* court's retroactive application of its holding to the reservation of rights letter in that case resulted from the insurer's failure to raise a timely argument that waiver cannot create coverage under *Laidlaw Environmental Services (TOC), Inc. v. Aetna Casualty & Surety Co. of Illinois*, 524 S.E.2d 847, 852 (S.C. Ct. App. 1999). But three years later, in *Ex parte Builders Mutual Insurance Company*, the Supreme Court of South Carolina characterized its opinion in *Harleysville* as concluding that an inadequate reservation of rights letter "constituted an implied waiver" and therefore that the insurer could not deny coverage *even though* it disputed whether there was an occurrence of property damage to create coverage in the first place. 847 S.E.2d 87, 94 (S.C. 2020). To the extent the Court of Appeals of South Carolina's waiver rule in *Laidlaw* conflicts with *Harleysville* and *Ex parte Builders Mutual*, we apply

6

*Harleysville*, the holdings of the Supreme Court of South Carolina, and so controlling South Carolina law.

Finally, the insurers argue that *Ex parte Builders Mutual* dilutes some of the duties of notice insurers have under *Harleysville*. If *Ex parte Builders Mutual* overruled any part of *Harleysville*, it was only with respect to the special referee's suggestion in that case that insurers could not seek to allocate coverage in subsequent declaratory-judgment actions. *Ex parte Builders Mutual*, 847 S.E.2d at 95 n.8 (citing *Harleysville*, 803 S.E.2d at 294). Moreover, even if *Ex parte Builders Mutual* had diluted some of insurers' duties to notify insureds of potential conflicts of interest or the need for an allocated verdict, that has little bearing on the reservation of rights issue. Rather, as Stoneledge argues, *Ex parte Builders Mutual* did not overrule, but in fact reaffirmed, the holding of *Harleysville* concerning reservations of rights. *Id.* at 94.

In sum, the insurers' attempts to skirt *Harleysville*'s application in this case fail. We therefore proceed to evaluate the reservation of rights letters sent here under the standard set out in *Harleysville*.

## III.

In *Harleysville*, the court found the reservation of rights letter insufficient because the insurer merely "identif[ied] the policy numbers and policy periods for policies that potentially provided coverage" and "incorporated a nine- or ten-page excerpt of various policy terms, including . . . numerous policy exclusions and definitions." 803 S.E.2d at 298–99. Specifically, the insurer failed to reserve its rights as to the following issues: "whether any damages resulted from acts meeting the definition of occurrence, whether

7

any damages occurred during the applicable policy periods, and what damages were attributable to non-covered faulty workmanship [e.g., the your-work exclusion]." *Id.* at 300. These are some of the coverage defenses the insurers raise here but did *not* set forth in their reservation of rights letters.

*Harleysville* not only deemed a general reservation of rights without these defenses insufficient, it also provides guidance as to what might constitute an adequate reservation of rights. At the very least, an insurer should "discuss[] [its] position as to the various provisions" and "expla[in] . . . its reasons for potentially denying coverage." *Id.* If the insurer's reservation of rights is ambiguous, a court must construe the reservation "strictly against the insurer and liberally in favor of the insured." 14A Steven Plitt, Daniel Maldonado, Joshua D. Rogers & Jordan R. Plitt, Couch on Insurance § 202:48 (3d ed. 2021) (citing *Harleysville*, 803 S.E.2d at 298). With those guiding principles in mind, we turn to the reservation of rights letters before us now. The letters here, like the letter in *Harleysville*, fail to inform the insureds that the insurers intend to litigate coverage issues and do not apprise the insureds of potential conflicts of interest. Both insurers agreed to defend the claim. And for almost all of the coverage issues here, the reservation of rights is of the *Harleysville* "we will let you know later" variety. *See* 803 S.E.2d at 299.

Builders Mutual's May 2009 reservation of rights letter merely refers the insured to certain policy exclusions and summarizes the general nature of those exclusions. That is exactly the sort of general reservation of rights that *Harleysville* deemed insufficient. Builders Mutual's July 2009 reservation of rights letter, in similar fashion, refers to "coverage issues" generally and then advises the insured that "your work product is not

8

covered," again directing the insured to consult exclusions in the policy. J.A. 365. Under *Harleysville*, simply stating a policy exclusion — without more — does not constitute a sufficient reservation of rights.

Cincinnati's March 2010 reservation of rights letter presents a closer question. The letter lists certain policy exclusions and notes that "coverage may be limited by several other exclusions and endorsements." J.A. 360–62. Applying *Harleysville*, that is still insufficient to reserve the right to dispute coverage as to the policy exclusions. However, the Cincinnati letter continues, with respect to whether coverage is triggered in the first place, stating that "[i]t is doubtful that the claim alleges the happening of an 'occurrence'" or that the "claim alleges 'property damage' within the policy definition," and if there is no "occurrence" or "property damage" as defined by the policy, there is "no coverage." *Id.*

In assessing whether this is a sufficient reservation of rights under *Harleysville*, we look to the punitive-damages provision in *Harleysville* itself, for which the court found an adequate reservation of rights. There, the letter stated that the insurer "reserves the right to disclaim coverage for [punitive damages]" *because* "under all of your policies, they would not arise from an 'occurrence,' do not fit the definition of 'bodily injury or property damage,' and/or were 'expected and intended' within the meaning of exclusions in the policies." *Harleysville*, 803 S.E.2d at 299. Unlike the reservation of rights as to punitive damages in *Harleysville*, Cincinnati's letter is devoid of any explanation for *why* Cincinnati finds it "doubtful" that there is an "occurrence" or "property damage" within the meaning of the policy. At best, Cincinnati's purported reservation is ambiguous. And so, although

9

Cincinnati's letter fares slightly better than the other challenged reservation of rights letters, it still fails to meet *Harleysville*'s standard for a sufficient reservation of rights.

Undeterred, the insurers raise other coverage defenses with respect to the breach of fiduciary duty cause of action, the applicable policy periods, and the known-loss exclusion. However, these appear to be reservation of rights issues in a new guise,[2] and as we concluded above, the insurers' reservation of rights letters here were inadequate. Therefore, we find no reversible error in the district court's application of *Harleysville* to the reservation of rights letters in this case.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[2] One issue arguably falls outside the *Harleysville* reservation of rights ambit. In their supplemental opening brief, the insurers raise for the first time the argument that the breach of fiduciary duty judgment against Thoennes has been extinguished, thereby precluding coverage entirely for that judgment. Even if that were true (we do not believe it is), the insurers have waived any such argument in this appeal. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief . . . .").