## Upright Material Handling Inc. v. Ohio Casualty Group

C.P. of Lackawanna County, no. 01-CV-1260.

*Robert W. Munley,* for plaintiffs.
*Jerry A. Snyder,* for defendant.

MINORA, *J.,* January 19, 2005—

## INTRODUCTION

This matter is before the court by way of plaintiff's and defendant's, Ohio Casualty Group's, cross motions for summary judgment pursuant to Pa.R.C.P. 1035. Following a jury trial held before this court, wherein a verdict has essentially been rendered, the parties filed their timely motions, responses and briefs, all addressing insurance coverage questions. The parties have presented their respective arguments to this court. Accordingly, this matter awaits disposition.

## STATEMENT OF THE CASE

On March 15, 1995, Suzanne Bombar, an employee of Lord Label Inc., located in Dunmore, Pennsylvania, was struck and severely injured by a forklift while at work. Suzanne Bombar sustained extensive injuries to her right leg which eventually led to amputation. At the time of the accident, the forklift, which struck the plaintiff, was operated by another employee of Lord Label

who drove it in reverse through a plastic curtained opening that obstructed the operator's view.

The forklift was manufactured by Linde Inc., a German company, and shipped to Baker Inc, a subsidiary of Linde Inc. Baker in turn sold the forklift to Upright Material Handling Co., in Avoca, Pennsylvania. Upright is in the business of selling such industrial equipment and servicing the same. Lord Label purchased the forklift used the day of the accident from Upright without a back-up alarm or strobe light which engage when the forklift is driven in reverse. The forklift was shipped from the manufacturer to Upright without a manufacturer's back-up alarm installed.

The forklift was later equipped with an after-market back-up alarm installed by an employee of Upright upon Lord Label's request. Due to the annoyance of the alarm's sound, the evidence indicated that the alarm was intentionally disconnected by Lord Label employees on several occasions including the date on which the accident occurred. There was also evidence that the wiring got caught on structures at Lord Label causing it to disconnect as well. The alarm and strobe light were both battery powered. The manner in which the alarm was installed allowed the wires to be exposed on the outside of the forklift pipe frame near the roll bar. Upright's agent simply mounted the alarm by wrapping the wires around the outside of the roll bar rather than passing the wires through the center of the roll bar as intended by the manufacturer. Upright had been called several times to reinstall the alarm before the accident occurred. There was a factual dispute as to whether the alarm wires were intentionally disconnected or whether they caught and were

pulled off during normal operations due to the wires' exterior mounting.

In March of 1994, Upright purchased an insurance policy from First Insurance Center, an agency who used Ohio Casualty Insurance Company, as an underwriter. The Insuring Agreement states it will pay damages that the insured may be legally obligated to pay because of "bodily injury" or property damage in which the policy applies. (See Commercial general liability coverage form, p. 1.) Furthermore, the insurer will hold the right to defend the insured against any "suit" seeking such damages under the application of the insurance policy. (See Commercial general liability coverage form, p. 1.) Yet, the insurer will not pay sums that the insured may be obligated to pay or defend suits that encompass a matter to which the insurance policy does not apply. (See Commercial general liability coverage form, p. 1.) Additionally, under the business owner's section of the policy lays a specific endorsement no. CG ** ** ** ** labeled "Exclusion—products-completed operations hazard" exception, whereby the insurer will not cover the insured for "bodily injury" or "property damage" which occurs away from the premises the insured owns or rents and arises out of "your product" or "your work." (See Commercial general liability coverage form, p. 5.)

After the incident involving the forklift truck, the principals of Upright, Patrick Conflitti and Arthur Watkins met with Matt Alferio, the owner of First Insurance Center and notified him of the accident. During that meeting, Mr. Alferio told Mr. Conflitti and Mr. Watkins that no insurance coverage was available. At that time, First Insurance Center did not notify its underwriter, Ohio Casualty Inc., of the accident Upright had reported in-

volving the forklift truck. Subsequently, Upright Inc. purchased "products-completed hazard coverage."

On May 24, 1996, Suzanne Bombar filed a complaint against both Baker Inc. and Upright Inc. including claims in strict liability and negligence. Upon service of process, Upright took the complaint to its attorney, Ralph P. Carey, Esq., who entered a defense. In April 1999, during discovery proceedings, a request was made upon Upright to produce a copy of its insurance policy and, in turn, Upright referred the request to First Insurance Company. First Insurance Company denied coverage due to the "products and completed operations exclusion" by a letter sent to Upright Inc.

In June 1999, plaintiff Bombar sent a copy of the complaint to Ohio Casualty who later notified the plaintiff, by letter dated June 30, 1999, that there was no coverage due to the exclusion. This letter was never sent to the insured.

Deposition testimony indicates that Ohio Casualty Insurance Co. was fully aware of the accusations made against the insured upon receipt of Bombar's complaint, but throughout the entire proceedings the insurance agents' attempts to investigate the claim were only cursory, at best. The local claims manager conceded that he made the decision to inform plaintiff's counsel that there would be no coverage provided to Upright due to the exclusion. (See plaintiff's exhibit D, D.T. Culotta.) Mr. Klatt, the local adjuster, was given instructions by the local manager to obtain statements from the owners of Upright Inc. by contacting its counsel, Ralph Carey, Esq. Apparently, Klatt only scheduled a meeting and retained statements from one of the insured. Klatt remained the adjuster for four months, and then resigned. The matter

was next referred to Don Osbourne. Mr. Osbourne made several attempts to schedule a meeting with the owners of Upright by mail; three of these letters were misaddressed. Osborne contacted the Law Offices of Ralph Carey on a monthly basis by phone. During one of these phone conversations, Mr. Osbourne was informed that mediation was in progress and that the matter most likely was going to trial. Yet, Ohio never issued a reservation of rights letter to Upright during this time, nor did it notify Upright that its coverage was denied in writing, or enter a defense. It has been noted that neither Upright, nor its counsel, ever made written demand for a defense on Ohio in the instant suit.

On January 19, 2001, a jury returned a verdict against Upright in negligence for $1,800,000. Upright appealed the action to the Superior Court of Pennsylvania which was later abandoned upon plaintiff's motion to mold the verdict to include delay damages. The verdict was ultimately molded to $2,393,458.65.

On March 21, 2001, Upright filed the present declaratory judgment action claiming that Ohio Casualty should have defended it during the course of the initial action and that Ohio should indemnify it for the verdict, and pay damages for alleged bad faith in handling the claim. Original plaintiff, Suzanne Bombar, filed a petition to intervene as the real party in interest, which was granted by order of this court on April 29, 2002. The intervenor complaint was filed May 24, 2002. On October 18, 2002, Suzanne Bombar was assigned all rights that Upright may have under its policy of liability insurance issued by Ohio Casualty. Plaintiff and defendant, Ohio Casualty Insurance Company, ask that this court grant their respective motions for summary judgment.

The prime question addressed to this court is whether either motion for summary judgment may be granted in favor of one party over the other? To answer this question we must first lay a brief foundation of the requirements needed for a grant of summary judgment in a declaratory judgment action.

## Declaratory Judgment/Summary Judgment Action

"[T]he purpose of the Declaratory Judgment Act is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations." *Keystone Aerial Surveys Inc. v. Pennsylvania Property & Casualty Insurance Association,* 777 A.2d 84, 88 (Pa. Super. 2001), citing *Juban v. Schermer,* 751 A.2d 1190, 1193 (Pa. Super. 2000). The Declaratory Judgment Act, 42 Pa.C.S. §§7531, 7541, grants the trial court the power to pronounce the status and rights of the parties involved in an action, regardless of whether further relief can be sought. *Keystone Aerial Surveys Inc. v. Pennsylvania Property & Casualty Insurance Association,* 777 A.2d 84, 88 (Pa. Super. 2001) citing *Juban v. Schermer,* 751 A.2d 1190, 1193 (Pa. Super. 2000). The Superior Court further established that "[o]rdinary summary judgment procedures are applicable to declaratory judgment actions." *Keystone Aerial Surveys Inc., supra* at 88; see *Lititz Mutual Insurance Company v. Steely,* 746 A.2d 607, 609 (Pa. Super. 1999). Therefore, "[i]n examining this matter, as with all summary judgment cases, we must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Keystone Aerial Surveys Inc., supra* at 89. The Superior Court stated:

"In order to withstand a motion for summary judgment, the non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted)

After a review of current case law, it is evident that summary judgment can properly be granted in the clearest of cases where a review of the record shows that the moving party is entitled to judgment as a matter of law. *Pestalozzi v. Philadelphia Flyers Ltd.,* 394 Pa. Super. 420, 576 A.2d 72 (1990). With that being said, it is upon this court to determine if either party is entitled to judgment as a matter of law.

The most recent decision analogous to the case before the court was decided in *Allstate Insurance Co. v. Fodor,* 49 D.&C.4th 541 (Monroe Cty. 2000).[1] The court noted that summary judgment is appropriate within a declaratory judgment action. To determine whether the grant of summary judgment is proper the court must take into

---

1. In *Allstate Insurance Co. v. Fodor,* 49 D.&C.4th 541 (Monroe Cty. 2000), the Fodors, Allstate insurance policyholders, commenced an action against Butler Park Self Storage and Stanley Works for injuries sustained by their minor daughter from an automatic security gate on the Butler Park premises. The Fodors were eventually joined as additional defendants. At that point the Fodors requested Allstate Insurance to provide them with a defense and indemnification. Allstate responded by filing a declaratory judgment action alleging that it was not required to provide a defense or indemnity to the policyholders pursuant to exclusionary language within the policy. The insured next filed a motion for summary judgment which was granted.

account all pleadings, depositions, interrogatories, admissions on file with any affidavits to ascertain if any genuine issue of material fact exists. *Allstate Insurance Co.,* 49 D.&C.4th 541, 545-46; see also, *Aetna Casualty & Surety Co. v. Roe,* 437 Pa. Super. 414, 420, 650 A.2d 94, 97 (1994); *Neil v. Allstate Insurance Co.,* 379 Pa. Super. 299, 302, 549 A.2d 1304, 1305 (1998). Moreover, the record must be viewed in a light most favorable to the non-moving party and all well-pleaded facts must be accepted as true while the non-moving party should be given the benefit of all reasonable inferences drawn therefrom. *Neil, supra* at 302, 549 A.2d at 1305. To withstand an insurer's motion for summary judgment, the contesting party must establish that there are genuine issues of material fact within the policy language or its application. *Allstate Insurance Co., supra* at 555.

One decision directly on point was rendered by the Pennsylvania Superior Court in *Gamble Farm Inn Inc. v. Selective Insurance Co.,* 440 Pa. Super. 501, 656 A.2d 142 (1995). There the trial court granted summary judgment in favor of an insured where it found that a policy exclusion was inapplicable. The court relied on the *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983) decision wherein it stated that the interpretation of insurance contracts is a question of law, not a question of fact that can be decided by the court rather than the jury. *Gamble Farm Inn Inc.,* 440 Pa. Super. at 505, citing *Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). (citations omitted)

With this standard in mind we will address the issues presented by both parties' motions. The materiality of

these issues will be confronted individually in the following discussion.

## Discussion

### (1) Whether a Negligence Claim Is Excluded From Coverage Under the Ohio Casualty Insurance Policy Pursuant to the Products-Completed Operations Hazard Exclusion?

We will begin our analysis by first addressing Upright's position advanced by its motion for summary judgment. The main issue involved in the instant action concerns an Ohio Casualty Insurance commercial liability policy labeled BKW********, which was purchased by Upright Materials Handling Inc. The effective dates of this policy were June 4, 1994 through June 4, 1995. This policy carried a special endorsement no. CG ** ** ** ** entitled the "products-completed operations hazard" exclusion. The said policy was in full effect at the time of Suzanne Bombar's accident at Lord Label on March 17, 1995. The defendant, Ohio Casualty, asserts that coverage is not available under the instant policy due to the "products-completed operations hazard" exclusion. Yet, the exclusion which Ohio relied upon does not exclude coverage of claims for negligence, including negligent failure to warn. Instead, the policy states, injuries that result from a product itself are excluded from coverage. In the underlying case, a negligence claim has been made and proven. A verdict, including delay damages, has been returned in negligence in favor of plaintiff for $2,393,458.65. As a result, Ohio, under the terms of its policy, must provide

coverage to its insured since the exclusion provided by endorsement is not applicable.

The issue presented involves the applicability of a contract for an insurance policy. It must be made clear how the interpretation of those policy provisions operate in light of the insured. It has been settled that where a policy provision is ambiguous, the policy is to be construed in favor of the insured, who lacks bargaining power regarding the terms of the contract, and against the insurer, the drafter of the contract. *Gamble Farm Inn Inc., supra* at 505. See also, *Venetian Blind Co., supra; Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507 (1986). Yet, when the language of a contract is found to be clear, a court is required to give effect to that language. *Gamble Farm Inn Inc., supra.* It ultimately is the determination of the court to decide whether a writing is clear and unambiguous. *Id.* citing *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385 (1986). Furthermore, the court in *Gamble Farm Inn,* in dictum, explains the purpose of insurance coverage when it states "[a]n insurer contracts with an insured to provide coverage for certain risks, in return for payment of premiums which are calculated based upon those risks. It is reasonable and understandable that, when issuing an ordinary commercial CGL policy, an insurer undertakes to cover the risks which may *[possibly]* occur." *Id.* at 510-11. (emphasis added) In interpreting the language of contract provisions, the reasonable expectations of the insured must not be defeated. *Harford Mutual Insurance Co. v. Moorhead,* 396 Pa. Super. 234, 240, 578 A.2d 492, 495 (1990), citing *Huffman v. Aetna Life and Casualty Co.,* 337 Pa. Super. 274, 486 A.2d 1330 (1984). Ambiguities in insurance contracts must be resolved in favor of the insured and

read in a manner consistent to the insured's reasonable expectation at the time of contracting. *Federal Kemper Insurance Co. v. Jones,* 777 F. Supp. 405 (1991). Accordingly, the Ohio insurance contract provisions must be read in a light favorable to the insured while allowing a reasonable interpretation of the parties' intent.

To fully examine the crux of both parties' arguments several tiers of analysis are required. Specifically, the subject matter that must first be addressed is the coverage issue under the "products-completed operations hazard" exclusion. Additionally, we must establish whether the theories in which a complaint is pled are outcome determinative on whether the Ohio exclusion will apply to exclude coverage to Upright, the insured, or not. These questions will be addressed and answered as follows.

The Superior Court of Pennsylvania in *Harford Mutual Insurance Co. v. Moorhead,* 396 Pa. Super. 234, 251, 578 A.2d 492, 501 (1990), found that where "a claim is brought under the auspices of 'negligent failure to warn,' it is appropriate to view the claim as one charging improper *conduct,* and not one of making a defective *product.*" (emphasis in original) In that case, the defendants, the Moorheads, operated a business which sold winemaking supplies. The Moorheads sold sulphur strips, needed in the wine-making process, to co-defendant, Mr. Stevens, who used them for killing bacteria in the winemaking process by igniting the strips and placing them in a wine vessel/whiskey barrel. When placed in the barrel, the strips ignited with the preexisting whiskey vapors and exploded, injuring the plaintiff. Defendants had been insured under a comprehensive liability policy issued by Harford Mutual covering business operations. Harford denied coverage maintaining that the products-

hazard exclusion barred coverage of the claim. The Superior Court looked to the language of an identical policy exclusion which noted that the "products hazard" applied to damage that arose out of the named insured's products. The action litigated involved conduct, specifically, negligent failure to warn. Ultimately, the court found that the "products hazard" exclusion did not apply, "but only when a *product,* rather than a *service,* is the [alleged] cause in fact of damages or injury to a third person." *Harford, supra* (emphasis added) citing *Friestad v. Travelers Indemnity Co.,* 260 Pa. Super. 178, 393 A.2d 1212 (1978). The court also noted the definition of products hazard is defined as an injury "arising out of the named insured's products. . . ." *Harford, supra* at 253, 578 A.2d at 502. The court continued by stating that "[n]owhere does it purport to exclude injuries arising out of negligent conduct, and we decline to so expand the definition." *Id.* at 253, 578 A.2d at 502, citing *Chancler v. American Hardware Mutual Insurance Co.,* 109 Idaho 841, 712 P.2d 542, 547-48 (1985).

Likewise, the *Friestad* court noted that, under a comprehensive business owner's insurance policy, it is preferable to define products hazard in terms of products liability law and apply the exclusion only when a product rather than a service is the cause in fact of the complained of damages or injury. *Friestad, supra* at 188, citing Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb.L.R. 415, 430-31 (1971). In *Friestad,* the appellant, Andreas Friestad, trading as Superior Heating Co., carelessly installed a Sears' brand furnace in a consumer's home which resulted in a fire destroying the home and contents. Judgment was en-

tered in the homeowner's favor against Sears, which sought indemnity from Friestad. The insured, Friestad, notified its insurance company of the claim but it denied coverage. That policy included exclusions for "products hazard" and "completed operations," which were defined separately. It was ultimately held that coverage was not available to Friestad since the incident arose from the service of installing the furnace and therefore came within the ambit of the "completed-operations hazard." The *Friestad* court affirmed that the principal thrust of "completed operations" is the insured's provision of a service, while the principal thrust of the "products hazard" involves the insured's production or sale of a product. *Id.* at 182.

The court in *Keystone Spray Equipment Inc. v. Regis Insurance Co.,* 767 A.2d 572 (Pa. Super. 2001), takes this analysis a step further when it considered the necessary criteria for a "completed" service. There the court held that the insured's negligent misrepresentation was not regarded as complete, for the purpose of a "completed operations" exception until the negligence was relied upon and caused an injury. This rule applies even where the service provider has left the premises and surrendered control to the customer. This is true because one cannot be injured by negligence until the misrepresentation is relied upon. *Keystone Spray Equipment Inc., supra* at 575, citing *Eastcoast Equipment Co. v. Maryland Casualty Co.,* 207 Pa. Super. 383, 218 A.2d 91 (1996). See also, *Reed Roller Bit Co. v. Pacific Employers Insurance Co.,* 198 F.2d 1 (5th Cir. 1952), *cert denied,* 344 U.S. 920, 73 S.Ct. 386, 97 L.Ed. 709 (1953). The *Eastcoast* court noted that "this rule applies equally to negligent misrepresentation and negligent failure to

warn theories because the underlying policy is the same to prevent an insurer from refusing coverage for an injury caused by negligence at the time of installation simply because the injury cannot be discovered until after the installation is complete and the installed equipment is put into service. *Eastcoast, supra* at 98 (rejecting contrary law in New Jersey). To hold otherwise would eviscerate the coverage because a failure to warn has no effect until the party to whom the warning was owed suffers an injury. *Id.* at 99. Thus, a 'completed operations' exclusion does not absolve an insurer of its contractual duty to defend an insured in a negligent failure to warn claim when the lack of warning is the alleged cause of the injury." *Keystone Spray Equipment Inc., supra* at 575-76.

Additionally, the Superior Court in *Pennsylvania National Mutual Casualty Insurance Co. v. Kaminski Lumber Co. Inc.,* 397 Pa. Super. 484, 580 A.2d 401 (1990), similarly ruled that an exclusion for products hazard does not apply to claims regarding negligent failure to warn.[2] The *Kaminski* court relied upon both *Harford* and *Friestad* in determining that such exclusion applies only to claims that are grounded in products liability not in negligence. *Id.* at 488, 580 A.2d at 402. After a careful

---

2. In *Pennsylvania National Mutual Casualty Insurance Co. v. Kaminski Limber Co. Inc.,* 397 Pa. Super. 484, 580 A.2d 401 (1990), the injured party was struck by a board rejected from a saw while completing the duties of his employment. The injured employee sued the saw manufacturer and wholesaler, Kaminski, who sold the saw to his employer, for negligent failure to warn. Kaminski was issued a comprehensive general liability policy from the insurance company which refused coverage for the claim based upon the products hazard exception in the policy.

review of the foregoing cases, it can be affirmed that the basis of an insured party's complaint is outcome determinative. Should the injured party's complaint sound in negligence, including negligent failure to warn or negligent misrepresentation, then recovery from the insurer is likely when a "product-completed operation hazard" exclusion is at issue.

Accordingly, Ohio Casualty's exclusion is identical to those referenced in the above mentioned cases. Ohio's exclusion, as defined in the policy, was a "products-completed operations hazard" exclusion which included products and maintenance, service, repair of products occurring away from the insured's premises. (See plaintiff's exhibit A, Commercial general liability coverage form.) Yet, under this same exclusion the insurer denied coverage for installation negligently completed by the insured, including a count for negligent failure to warn. The thrust of Suzanne Bombar's complaint and verdict rests upon negligence including negligent failure to warn of defects in the alarm and negligent installation, service and maintenance of the alarm, among other counts, and not products liability.

The Superior Court in *Harford* pointed out that in the harshest of states to establish a ground of recovery against an insurer, the plaintiff must prove negligence in a failure to warn claim properly. *Harford, supra* at 248, 578 A.2d at 499. Here this burden has been met. Should the Ohio insurance policy exclusion be applied to deny coverage over the claim in the foregoing suit, then the underlying purpose of carrying liability insurance would surely be circumvented. The defendant, Ohio Casualty, must provide coverage for its insured based upon the foregoing precedent and analysis.

### (2) Whether a "Products-Completed Operations Hazard" Provision Enables an Insurer To Avoid the Duty To Defend an Insured in a Suit Based on Negligence?

"It is well established that an insurer need only defend an insured in a claim if the insurance contract provides coverage for a suit of that nature." *Keystone Spray Equipment Inc., supra* at 574, citing *Gene's Restaurant v. Nationwide Insurance Co.,* 519 Pa. 306, 548 A.2d 246 (1988). To decide if the duty to defend exists, the court must evaluate the allegations in the complaint against the provisions of the insurance contract and establish whether the insurer must indemnify the insured if the claims in the complaint are proven. *Keystone Spray Equipment Inc., supra.*

To determine if Ohio Casualty did have a duty to defend Upright against Bombar's claim, we must compare the negligence allegation with the provisions of the Ohio Casualty insurance contract including the "products-completed operations hazard" exclusion. The allegations asserted in Bombar's complaint included counts of negligence for failure to warn, inspection, installation, improper issuance of warnings among other charges against Upright, the insured. Additionally, Bombar declared counts of strict liability, implied warranty, express warranty and a claim for punitive damages against Upright. The insurance contract that was in place at the time of the accident defined "products-completed operations hazard" as follows:

" 'Bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

"(1) Products that are still in your physical possession; or

"(2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:

"(a) When all of the work called for in your contract has been completed.

"(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

"(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

"(3) Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

" 'Your work' means:

"(a) Work or operations performed by you or on your behalf; and

"(b) Materials, parts or equipment furnished in connection with such work or operations.

" 'Your work' includes:

"(a) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work,' and

"(b) The providing of or failure to provide warnings or instructions."

In reading both the policy and the complaint, at first glance it may appear that coverage may not exist. Yet, as noted above in the discussion, the installation of the back-

up alarm by Upright was a service, but it was not completed at the time the accident occurred because the installation was both faulty and negligent, which the jury concluded and gave rise to the complained of injury. See *supra* text p. 315. The appearance of policy coverage over the claim alone does not determine whether there is a duty to defend by the insurer. "An insurer who refuses to defend its insured from the outset does so at its own peril." *The Board of Public Education of the School District of Pittsburgh v. National Union Fire Insurance Co. of Pittsburgh, Pa.,* 709 A.2d 910, 913 (Pa. Super. 1998), citing *Aetna Casualty and Surety Co. v. Roe,* 437 Pa. Super. 414, 423, 650 A.2d 94, 99; *Stidham v. Millvale Sportsmen's Club,* 421 Pa. Super. 548, 564, 618 A.2d 945, 953 (1992). "[T]he duty to defend remains with the insurer until it is clear the claim has been narrowed to one beyond the terms of the policy. . . . An insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion." *Board of Public Education of the School District of Pittsburg, supra* at 913. (citations omitted)

Based upon precedent, the defendant, Ohio Casualty, carried the duty to defend until it met its burden of proving the applicability of its exclusion. The facts do not indicate that Ohio Casualty met its burden of proof in establishing the applicability of the exclusion, nor did it make any attempt to defend the insured in the initial claim. Deposition testimony indicates that Ohio's agent was first notified of the claim in May 1999 by a phone conversation with plaintiff's counsel. (See plaintiff's exhibit D, D.T. Culotta pp. 35-39.) Ohio Casualty's Scranton Claims Manager, Gary Culotta, was sent a memorandum by Cathy Anthony of First Insurance Cen-

ter on June 9, 1999, informing him of the claim made against Upright Material Handling Inc. in May of 1996. This memo was followed by additional correspondence advising Ohio Casualty of the claim against the insured. By letter dated June 30, 1999, Mr. Culotta responded to a previous letter sent by Attorney Munley, indicating that there would be no coverage provided by Ohio Casualty relying on the "products-completed operations exclusion." Mr. Culotta provided no explanation in his letter to Attorney Munley as to the denial of coverage only a copy of the policy exclusion. (See plaintiff's exhibit C.) Furthermore, in Mr. Culotta's deposition, he stated that he alone made the determination to deny coverage without consulting with counsel. Ohio Casualty did not contact the insured prior to denial of coverage, nor did they conduct a complete investigation of the claim, nor did it provide an explanation as to why the claim would be denied. Only a verbal denial was provided by Ohio Casualty. (See plaintiff's exhibit D, D.T. Cullotta pp. 35-39.)

According to insurance industry standards, as provided by Mr. Chett's expert report, on the face of an insurance policy it may appear that coverage may not be available for a particular loss. (See plaintiff's exhibit P, expert report of Mr. Chett, p. 7.) Yet, there are factors that may void policy exclusions and interpretations of the insuring agreements which include: ambiguity of policy provisions, statutory or case law, and facts of the accident or loss. Ohio Casualty has provided no indication that any of the above listed factors had even been considered let alone investigated. *Id.* Furthermore, in an opinion written specifically for the initial proceeding, it is stated that "an insurer will be guilty of having breached its duty

to defend in virtually all cases in which it does not defend the insured and a judgment is entered that is covered by the policy. (See plaintiff's exhibit M, opinion.) "An insurer must defend its insured if the underlying complaint alleges facts which, if true, would actually or *potentially* bring the claims within the policy coverage." *The Board of Public Education of the School District of Pittsburgh, supra* at 913. (emphasis in original) Any doubts in regarding the insurer's duty to defend must be resolved in favor of the insured. *American Contract Bridge v. Nationwide Mutual Fire Insurance,* 752 F.2d 71, 76 (3d Cir. 1985). Ohio Casualty made no investigation, not even to determine whether the insured would be covered should the facts asserted in the complaint be true. Also, the testimony provided indicates that no documentation has been made under the investigation of the claim. (See plaintiff's exhibit D, D.T. Culotta). It is evident that Ohio failed to meet its burden to show that coverage was not applicable. Additionally, Ohio made no attempt to defend the insured as is required according to the above enumerated cases. Therefore, the defendant Ohio Casualty should be held liable for its actions and inactions in denying Upright a defense in the initial suit, even under a reservation of rights.

### (3) Whether Coverage Has Been Voided on Account of the Actions Or Inactions of the Insured?

The defendant asserts that the actions and inactions of Upright voided any possible responsibility Ohio might have in providing insurance coverage. An insured's breach of a duty to cooperate may relieve the insurer from liability under the insurance policy if the breach is

substantial. *Forest City Grant Liberty Associates v. Genro II Inc.,* 438 Pa. Super. 553, 559, 652 A.2d 948, 951 (1995). The breach may be used as a defense only where the insurer suffered prejudice because of the breach. *Forest City Grant Liberty Associates,* 438 Pa. Super. at 559, 652 A.2d at 951. Essentially, the question raised here by the defendant, as to whether the insured committed a material breach of its duty to cooperate, is a non-issue. A breach of a duty to cooperate is accomplished "where the insured neglects to disclose information needed by the insurer to prepare a defense, does not aid in securing witnesses, refuses to attend hearings or appear and testify at trial or otherwise fails to 'render all reasonable assistance necessary to the defense of the suit.'" *Id.* at 560, 652 A.2d at 952; see also, *8 Appleman, Insurance Law and Practice* §4741. This is not the present case.

The evidence establishes that Upright, through two of its stockholders, notified their insurance agent, Matt Alferio, of the accident within one month of the occurrence. (See plaintiff's exhibit T, D.T. Alferio p. 36.) The deposition testimony of both Patrick Conflitti and Arthur Watkins, the stockholders of Upright, indicates that throughout the proceedings Upright acted reasonably in attempting to provide notice to Ohio Casualty for the claim and to keep Ohio informed. (See plaintiff's exhibits U and V.)

Conversely, the deposition testimony of Ohio Casualty agents reveals that the insurance company had not received notice of the claim and lawsuit until May of 1999, approximately four years after the complaint was filed. (See plaintiff's exhibit D, D.T. Cullotta pp. 35-39.) Furthermore, under the insurance policy, section IV Commercial General Liability Conditions paragraph (2) *Du-*

*ties in the event of occurrence, offense, claim or suit* states that

"(a) You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim. To the extent possible, notice should include:

"(1) How, when and where the 'occurrence' or offense took place;

"(2) The names and addresses of any injured persons and witnesses; and

"(3) The nature and location of any injury or damage arising out of the 'occurrence' or offense.

"(b) If a claim is made or 'suit' is brought against any insured, you must

"(1) Immediately record the specifics of the claim or 'suit' and the date received; and

"(2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or 'suit' as soon as practicable." (See plaintiff's exhibit A.)

Upright asserts that it did notify the insurer as soon as practicable after the occurrence involving the forklift truck. Testimony has been provided by the insured in which they state that two of its stockholders met with Matt Alferio, the owner of First Insurance Company, to notify him of the events which took place. (See plaintiff's exhibits U and V.) Upon that meeting the owners of Upright were notified that coverage would be denied. *Id.* Whether or not the insured fulfilled their duty under the insurance contract is not absolute upon their testimony alone. There still remains a question as to whether the act of the stockholders informing Matt Alferio, owner of First Insurance Company, and agent of Ohio Casualty

is the same as providing notice to Ohio Casualty Insurance Co. directly. The fact that Matt Alferio and First Insurance Company are the agents of Ohio Casualty Insurance Company has never been disputed. Matt Alferio clearly is an insurance agent employed by First Insurance Company, which is an insurance agency. Ohio Casualty, as principal, can be held liable to third parties for the wrongful conduct of their employees and their agents if the services rendered by the employees and agents were done in furthering the interests, activities, affairs or business of the principal. The agency relationship results from (1) the manifestation by the principal that the agent shall act for him or her, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking. *Basile v. H & R Block Inc.,* 563 Pa. 359, 761 A.2d 1115 (2000); see also, Restatement (Second) of Agency §1, comment b (1958). Our analysis of the facts shows that Alferio and First Insurance wrote the policy and initially opined the denial of coverage. These actions were never disavowed by Ohio Casualty. Later, Ohio also opined the denial of coverage as well. Accordingly, all three elements of *Basile* are met. Resultantly, then, the doctrine of vicarious liability applies and Ohio is accountable for their own actions by their employees, as well as those of Matt Alferio and First Insurance Company. There really has been no factual dispute regarding these matters submitted to this court for its consideration. *Myszkowski v. Penn Stroud Hotel Inc.,* 430 Pa. Super. 315, 634 A.2d 622 (1993).

Based on the above analysis, Upright's reporting by its two stockholders to Matt Alferio and First Insurance would be the equivalent of a direct report to Ohio Casu-

alty Insurance. The communication breakdown between Alferio, First Insurance and Ohio would seem to be a matter between those parties and better left to another day.

### (4) Do the Actions of Ohio Casualty Insurance Constitute Bad Faith Toward the Insured?

Several Pennsylvania courts have recognized that there is no common-law remedy in this state for bad faith on the part of insurers. *Terletsky v. Prudential Property & Casualty Insurance Co.,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994); *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 507, 431 A.2d 1228, 1232 (1994). The Pennsylvania Legislature has instead created a statutory remedy in 42 Pa.C.S. §8371 which provides that:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

Numerous Pennsylvania courts have also revealed that "bad faith" denotes a particular connotation in the insurance arena as defined in Black's Law Dictionary 139 (9th ed. 1999):

"*Insurance.* 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For pur-

poses of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." See *Adamski v. Allstate Insurance Co.,* 738 A.2d 1033, 1036 (Pa. Super. 1999); *Terletsky, supra* at 125, 649 A.2d at 688.

Additionally, the Pennsylvania Superior Court established a two-prong test that plaintiff must prove by clear and convincing evidence in order to establish a claim of bad faith against the defendant: (1) the insurer did not have a reasonable basis to deny benefits under the policy; and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis. *Terletsky, supra.* In addition, when an insurer acts with disregard or indifference to the rights of the insured, such actions may constitute bad faith. *Polselli v. Nationwide Mutual Fire Insurance Co.,* 23 F.3d 747, 751 (3d Cir. 1994).

The plaintiff asserts that the defendant insurance company acted under a guise of bad faith in both investigating the claim and refusing to defend the insured. To apply the Superior Court's two-part test it first must be established whether the insurer had a reasonable basis to deny benefits to the insured in the first place. The testimony of the Ohio Casualty agents suggests that there were no guidelines in place within the company as to the time frame of investigations and determination of claims. (Plaintiff's exhibit D, D.T. Cullotta.) Furthermore, Mr. Culotta, the insurance agent who found that the "products-completed operations hazard" applied, provided in his deposition that he alone made the decision to dishonor the insured's claim without a review of Pennsyl-

vania law, or without referring the matter to counsel. *Id.* Mr. Culotta never referred to any instructions as to the manner in which an investigation should be handled because no written guidelines had been instituted by the company for the handling of claims. Mr. Klatt, another insurance adjuster, did nothing more than set up a meeting with Mr. Watkins of Upright to secure a statement. (Plaintiff's exhibit D, D.T. Cullotta.) Mr. Osbourne was the last adjuster assigned to the claim who mailed several letters and placed a few phone calls. (Plaintiff's exhibit E, D.T. Osbourne.)

According to insurance industry standards, an insurer shall complete the investigation of a claim within 30 days of notification, unless the investigation cannot be completed within such time. See 31 Pa. Code §146.6. If additional time is necessary, within every 45 days, the insurer shall present the insured a written explanation for delay and state when a decision may be expected. 31 Pa. Code §146.6. The evidence that any investigation was performed by the Ohio insurance agents is lacking, let alone enough information to make a determination as to whether the policy exclusion applied. The evidence produced by the plaintiff shows the insurer did not have a reasonable basis to deny benefits to its insured. Furthermore, after the initial determination that coverage would not apply under the "products-completed operations" exclusion, no further contact was made with the insured. As Mr. Chett noted in his expert report, "Ohio Casualty had no reasonable basis for their outrageous conduct." (See plaintilf's exhibit P, expert report of Mr. Chett, p. 18.)

The definition of bad faith, within the insurance context as provided by Black's Law Dictionary, applies when

there has been a breach of a known duty by the insurer. The evidence provided by both parties substantiates there has been a blatant and reckless disregard on the part of the insurer. Ohio has breached its duty to investigate the claim as it provided it would do under the terms of the insurance policy. Ohio breached its duty to defend the insured as was also provided in the policy. The insurer had little if any contact with its insured throughout the entire proceedings. Without any standards in place as how investigations should be conducted, the company has permitted single individuals to arbitrarily determine whether or not a claim will be covered by the policy; this is a breach of industry standards. This behavior on the part of Ohio Casualty is surely reckless and denotes bad faith. The insurer must be held liable to the insured for any damages it caused due to its indifference and lack of professionalism.

### (5) Indemnification and Punitive Damages Due to Bad Faith.

### *Indemnification*

Plaintiff contends that because the defendant acted with bad faith, it is now liable for the excess verdict awarded to Suzanne Bombar by the jury. The plaintiff relies on *The Birth Center v. The St. Paul Companies Inc.,* 567 Pa. 386, 406, 787 A.2d 376, 389 (2001). There the Supreme Court of Pennsylvania stated that "Requiring insurers, who act in bad faith, to pay excess verdicts protects insured[s] from liability that, absent the insurer's bad faith conduct, the insured would not have incurred." *The Birth Center, supra* at 406, 787 A.2d at 388. (foot-

note omitted) Like determining whether a duty to defend exists, the court must look to the provisions of the insurance contract and determine whether the insurer would have a duty to indemnify if the allegations in the complaint are proven. *Unionamerica Insurance Co. Ltd. v. J.B. Johnson t/a Johnson Roofing Co.,* 806 A.2d 431 (Pa. Super. 2002). The duty to indemnify is a conditional obligation which arises only if, after trial on the third-party claim, it is established that the loss suffered is covered by the terms of the policy. *Unionamerica, supra* at 434.

Under the Insuring Agreement, the policy states that it will pay those sums that: "the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal injury' . . . to which this insurance does not apply." (See plaintiff's exhibit A, commercial general liability coverage form, coverage B personal and advertising injury liability.)

According to the language of the insurance contract, it is clear that indemnification is dependant upon overall coverage of the policy. (See plaintiff's exhibit A, section I.) The contract states that the insurer will pay those amounts that the insured becomes legally obligated to pay as damages to which the insurance applies. *Id.* As discussed above, the Ohio insurance contract does apply to the instant claim. Moreover, in reading the contract it is apparent that the third-party loss suffered is covered by the terms of the policy where it is stated that the insurer will pay damages because of "personal injury."

Indemnification is a conditional obligation and these conditions have been met; a verdict has been returned from the trial of the third-party claim, and that claim fits squarely within the parameters of the insurance policy. Ohio Casualty should be liable for the total excess verdict amount entered against Upright.

## Punitive damages

Plaintiff requests that punitive damages be awarded from the defendant due to the allegations of bad faith. The Superior Court in *Hollock v. Eric Insurance Exchange,* 842 A.2d 409 (Pa. Super. 2004), relies upon language found within 42 Pa.C.S. §8371 which empowers the trial court to award punitive damages to the insured if the insurer has acted with bad faith toward the insured. The statute also states that the only prerequisite to an award of punitive damages is a finding of bad faith. 42 Pa.C.S. §8371. It has been revealed by the plaintiff that the nature of Ohio's investigation was cursory at best. The agents investigating the claim had only a mere familiarity with the claim. No reservation of rights letter was ever sent or even discussed. The insurer to date has not denied the claim in writing to the insureds, nor presented any explanation for the denial aside from a brief verbal denial. For the forgoing reasons and those discussed earlier within this memorandum, the plaintiff may be entitled to recover punitive damages from the insured.

After close scrutiny of both Pennsylvania Rules of Civil Procedure, statutory law and case law, it is only proper that this court grant the plaintiff's motion for summary judgment and deny the defendant's motion. Clearly, the basis of our inquiry centered squarely on the inter-

pretation of insurance contracts which is a legal issue within the confines of the authority of this court. The initial claim as pled by Suzanne Bombar does fit squarely within Upright's insurance policy coverage provided by Ohio Casualty Insurance. Furthermore, the application of the policy parameters set forth by the Ohio Casualty Insurance contract is also a question that may be resolved by the court. Therefore this court finds that no genuine issue exists as to material fact. We therefore grant Upright's motion for summary judgment and deny Ohio Casualty's motion for summary judgment.

An appropriate order follows.

## ORDER

And now, to wit, January 19, 2005, upon consideration of the plaintiff's and defendant's, Ohio Casualty Insurance Co., the verbal and written arguments of counsel and in accordance with the preceding memorandum it is hereby ordered and decreed that the plaintiff's motion for summary judgment will be granted as follows:

(1) The court hereby declares that the insurance policy at issue covers the underlying accident involving Suzanne Bombar.

(2) The court finds that the defendant, Ohio Casualty Insurance Company, is liable for the entire amount of the verdict rendered by the jury in the underlying action including interest in the rate of 3 percent above the prime rate of interest from the date the claim was made.

(3) The court awards punitive damages against the defendant, Ohio Casualty Insurance, with attorney's fees and costs in an amount to be determined after a hearing.

(4) The court awards compensatory damages to the insured, Upright Materials Handling.

Based on the aforementioned, the defendant's motion for summary judgment will be denied.